UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JUSTIN W. HOLMES,

      Plaintiff,

v.                              Civil Action No. 2:09-0679

RUNYAN & ASSOC., Inc.,
d/b/a/ CENTURY 21 RUNYAN & ASSOC.,
PHH MORTGAGE CORPORATION, d/b/a
CENTURY 21 MORTGAGE,
and JOHN DOE HOLDER,

      Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

Pending is PHH Mortgage Corporation's motion to dismiss Counts II and III of the complaint, filed June 24, 2009.


I.


Plaintiff Justin W. Holmes ("Holmes") instituted this action in the Circuit Court of Kanawha County on May 13, 2009. The relevant facts, as set forth in the complaint and incorporated documents, are as follow.  Holmes, who resides in Charleston, has a high school education and works at Wendys. (Compl. at ¶ 2).  On November 15, 2006, Holmes entered into a purchase agreement for a home through defendant Runyan &

1

Associates doing business as Century 21 Runyan & Associates ("Runyan"). (Id. at ¶ 4, 6).  Runyan is a West Virginia corporation with its principal place of business in South Charleston.  (Id. at ¶ 4).  Runyan acted as Holmes' real estate broker with the purchase being contingent on Holmes finding acceptable financing.  (Id. at ¶ 6).

Runyan preapproved Holmes for a loan through defendant PHH Mortgage Corporation doing business as Century 21 Mortgage ("PHH Mortgage"). (Id. at ¶ 3, 7).  PHH Mortgage is a New Jersey corporation doing business in West Virginia with its principal place of business in New Jersey.  (Id. at ¶ 3).  In discussions with PHH Mortgage, Holmes was assured that his monthly obligation would be $418 "and there would be no money paid down."  (Id. at ¶ 8). Holmes informed PHH Mortgage that he could not pay any more than the agreed upon monthly payment of $418.  (Id.).  PHH Mortgage did not inform Holmes of its intention to require Holmes to pay for mortgage insurance which would raise Holmes' payment by $79 a month.  (Id.).

Two days before the closing scheduled for December 21, 2006, Runyan's agent telephoned Holmes and informed him of the time and place of the closing.  (Id. at ¶ 9).  The agent informed Holmes that he would need to bring money to the closing.  (Id.).

2

Holmes objected, stating that this was not what the parties had agreed upon and that he did not intend to complete the sale. (Id.).  Runyan's agent responded: "You will be sued if you don't come to closing."  (Id.).

When Holmes attended the closing, he discovered that the payment was going to be increased by $79 a month in mortgage insurance.  (Id.).  Knowing he would have difficulty making the payments, Holmes nevertheless closed under the threat of suit if he did not close.  (Id. at ¶ 18).  Subsequently, the loan was assigned as part of a securitization to defendant John Doe Holder, the current unknown holder of the principal loan.

Holmes' four-count complaint alleges the following claims: Count I, unconscionable contract induced by unconscionable conduct under the circumstances, and therefore unenforceable under W. Va. Code § 46A-2-121; Count II, duress inasmuch as Holmes was induced to close by threat of suit; Count III, joint venture among the defendants, who acted with a joint purpose; and Count IV, failure to provide plaintiff with a requested written statement of account in violation of W. Va. Code § 46A-2-114(2).

3

On June 17, 2009, defendants removed, invoking the court's diversity jurisdiction.  On June 24, 2009, defendant PHH Mortgage moved to dismiss Counts II and III.  PHH Mortgage asserts that Count II is asserted solely against Runyan as it was Runyan's agent who threatened suit, and thus no claim is asserted against PHH Mortgage based on Holmes' theory of duress.  Further, PHH Mortgage contends that Count II fails to state a claim upon which relief may be granted inasmuch as duress is not a cognizable claim.  PHH Mortgage additionally asserts that Count III does not request relief inasmuch as joint venture is merely a theory of liability and not a claim upon which relief can be granted.

II.

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief."  Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).  Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).

4

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 550 U.S. at 563); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); see also Francis v. Giacomelli, No. 08-1908, 2009 WL 4348830, at * 4 (4th Cir. Dec. 2, 2009).

Application of the Rule 12(b)(6) standard requires that the court "'accept as true all of the factual allegations contained in the complaint . . . .'"  Erickson, 127 S. Ct. at 2200 (quoting Twombly, 127 S. Ct. at 1965); see also South Carolina Dept. Of Health And Environmental Control v. Commerce and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)).  The court must also "draw[] all reasonable . . . inferences from th[e] facts in the plaintiff's favor . . . ."  Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

III.

Count II of Holmes' complaint seeks relief for duress as a result of Holmes being "induced into the transaction by threat of suit if he did not close."  (Compl. at ¶ 18).  PHH Mortgage contends that Count II fails to state a claim upon which relief can be granted inasmuch as West Virginia law does not recognize an independent claim for duress.  Holmes cites Machinery Hauling, Inc. v. Steel of West Virginia as evidence that "business, or economic duress, has been a recognized claim in West Virginia for over a hundred years."  384 S.E.2d 139, 143 (W. Va. 1989).

In Machinery Hauling, the Supreme Court of Appeals of West Virginia considered the nature of business and economic duress.  384 S.E.2d at 142.

> The concept of "economic or business duress" may be generally stated as follows: Where the plaintiff is forced into a transaction as a result of unlawful threats or wrongful, oppressive, or unconscionable conduct on the part of the defendant which leaves the plaintiff no reasonable alternative but to acquiesce, the plaintiff may void the transaction and recover any economic loss.

Id.  The court noted that it had "utilized what amounts to a 'business compulsion' analysis, although we characterized it only as 'duress'" in several cases, and that "[w]hile we recognize the

6

concept of business or economic duress, we do not find it exists in this case." Id. at 143, 144.

Assuming arguendo that the supreme court of appeals intended to create a freestanding claim for duress, plaintiff has not sufficiently pled it.  The elements of proof necessary to state such a claim, if it exists, are fairly broken down into three individual components: 1) plaintiff was forced into a transaction, 2) the compulsion was based on unlawful threats or wrongful, oppressive, unconscionable conduct by the defendant, and 3) plaintiff was left with no reasonable alternative but to acquiesce.  At a minimum, plaintiff has not alleged the facts necessary to satisfy the third element.  Inasmuch as Count II lacks sufficient allegations under Twombly and its progeny to state a claim for relief that is plausible on its face, it is dismissed as to PHH Mortgage without prejudice.


IV.


Count III of Holmes' complaint alleges a joint venture inasmuch as "[e]ach of the acts of the Defendants was done in furtherance of a joint venture in which each of the acts of the Defendants were pursued with a joint purpose, and each of the

7

acts of one is the act of the others." (Compl. at ¶ 21).  PHH
Mortgage contends that joint venture is not a cognizable claim in
West Virginia.

        The court notes that plaintiffs in several other West
Virginia cases have asserted joint venture claims in cases
wherein the concept of joint venture has been recognized.  See
Armor v. Lantz, 535 S.E.2d 737 (W. Va. 2000); Herrod v. First
Republic Mortgage Corp., Inc., 625 S.E.2d 373 (W. Va. 2005);
Price v. Halstead, 355 S.E.2d 380 (W. Va. 1987); see also Short
v. Wells Fargo Bank Minn., N.A., 401 F.Supp.2d 549 (S.D.W.Va.
2005).  In these cases, the joint venture claims were analyzed
extensively and were not dismissed for failure to state a viable
claim.  Particularly apposite in this instance, it is observed in
a concurring opinion in Herrod that "[p]articipation in a joint
venture with a broker or other party in a predatory lending
context gives rise to liability for such claims under a claim of
joint venture." Herrod, 625 S.E.2d at 389 (J. Starcher,
concurring).  The court need not definitively resolve at this
point, however, whether joint venture is conclusively established
as a cognizable claim.

        Under West Virginia law, to the extent that a viable
joint venture claim exists, it "'is an association of two or more

persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill and knowledge.'"  Armor v. Lantz, 535 S.E.2d 737, 742 (W. Va. 2000) (quoting Price v. Halstead, 355 S.E.2d 380, 384 (W. Va. 1987)). "[A] joint venture arises out of a contractual relationship between the parties. The contract may be oral or written, express or implied." Price, 355 S.E.2d at 384; accord Sipple v. Starr, 520 S.E.2d 884, 892 (W. Va. 1999). "[M]embers of a joint venture are . . . jointly and severally liable for all obligations pertaining to the joint venture, and the actions of the joint venture bind the individual co-venturers." Armor, 207 W.Va. at 677, 535 S.E.2d. at 742. "In addition, each venturer is liable for the unlawful acts of a co-venturer when the act is committed within the scope of the venture and with the implied consent of the venturer."  Short v. Wells Fargo Bank Minn., N.A., 401 F.Supp.2d at 563; see also 46 Am.Jur.2d Joint Ventures § 42.

While the supreme court of appeals has "never formulated any broad analytical test by which to determine the existence of a joint venture," it has identified the "existence of certain 'distinguishing elements or features' essential to the creation of a joint venture." Armor, 535 S.E.2d at 743.

'As between the parties, a contract, written or verbal, is essential to create the relation of joint adventurers.... To constitute a joint adventure the parties must combine their property, money, efforts, skill, or knowledge, in some common undertaking of a special or particular nature, but the contributions of the respective parties need not be equal or of the same character. There must, however, be some contribution by each party of something promotive of the enterprise.... An agreement, express or implied, for the sharing of profits is generally considered essential to the creation of a joint adventure, and it has been held that, at common law, in order to constitute a joint adventure, there must be an agreement to share in both the profits and the losses. It has also been held, however, that the sharing of losses is not essential, or at least that there need not be a specific agreement to share the losses, and that, if the nature of the undertaking is such that no losses, other than those of time and labor in carrying out the enterprise, are likely to occur, an agreement to divide the profits may suffice to make it a joint adventure, even in the absence of a provision to share the losses.'

Armor, 535 S.E.2d at 743 (quoting Pownall v. Cearfoss, 40 S.E.2d 886, 893-94 (W. Va. 1946)(citations omitted)).

In view of these factors, the court concludes that Holmes has not pled the requisite elements for his joint venture claim.  As earlier noted, Holmes' putative joint venture claim alleges that "[e]ach of the acts of the Defendants was done in furtherance of a joint venture in which each of the acts of the Defendants were pursued with a joint purpose, and each of the acts of one is the act of the others."  (Compl. at ¶ 21).  Beyond this conclusory language, and the indication that Runyan

preapproved Holmes for a loan through PHH Mortgage as the lender, Holmes does not suggest any evidence of a written or verbal contract between the parties or an agreement to share in the profits.  Without these required elements, Holmes' joint venture claim lacks sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face under <u>Twombly</u> and its progeny.  Accordingly, Count III's joint venture claim is dismissed as to PHH Mortgage without prejudice.

V.

In summary, the court concludes that Holmes failed to plead sufficient facts to survive PHH Mortgage's motion to dismiss.  Accordingly, it is ORDERED that Counts II and III of Holmes' complaint be, and hereby are, dismissed as to PHH Mortgage without prejudice.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED: December 15, 2009

John T. Copenhaver, Jr.
United States District Judge

11